UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CRESTVIEW FARM, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-01288-O |
| | § | |
| ADOLFO CAMBIASO et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant La Dolfina S.A. LLC's ("La Dolfina US") Motion to Dismiss for Lack of Jurisdiction and Improper Venue and Brief in Support (ECF No. 19), filed January 8, 2021; Plaintiff Crestview Farms, L.L.C.'s ("Farm") Response (ECF No. 33), filed February 5, 2021; and La Dolfina US's Reply (ECF No. 37), filed February 19, 2021. Also before the Court are Defendants Adolfo Cambiaso and La Dolfina S.A.'s ("La Dolfina") Motion to Transfer Case out of District/Division (ECF No. 35), filed February 19, 2021; Farm's Response (ECF No. 38); Cambiaso and La Dolfina's Reply (ECF No. 40); Defendants' Supplemental Brief (ECF No. 43), filed April 7, 2021; and Farm's Supplemental Brief (ECF No. 45), filed April 9, 2021.

Having considered the motions, briefing, and applicable law, the Court **DENIES** the motions. And, considering the concurrent, overlapping case in the Southern District of Florida, the Court **STAYS** this case pending our sister court's decision to retain the overlapping case or transfer it to this Court.

1

**I.  BACKGROUND[1]**

Over a decade after the parties entered a contract to clone and sell Argentinian polo ponies, Farm and Defendants now raise their mallets into the air and call for a foul. In 2009, Cambiaso stood atop the professional polo world, owning, breeding, raising, and training a collection of top-ranked polo ponies through his Argentinian corporation La Dolfina.[2] Through their shared interest in polo and ponies, Cambiaso and Farm's manager Alan Meeker ("Meeker") developed a friendship that led to a business venture to clone Cambiaso's finest polo ponies to sell to the rest of the polo world. Following an initial meeting in London and months of discussion, the parties entered into a contract entitled "HORSE CLONING CONTRACT" through which Farm would pay Cambiaso $1,000,000; extract tissue from four of Cambiaso's mares; attempt to clone the mares from the tissue samples; and ultimately retain a portion of the clones, return others to Cambiaso, and sell the remaining (hereinafter, "2009 Agreement").

Farm paid Cambiaso and retrieved tissue samples from three polo ponies: Cuartetera, Lapa, and Small Person. Farm developed clone embryos from the tissue samples and stored the embryos in cryogenic storage. Unbeknownst to Farm, Cambiaso did not own Small Person, resulting in Farm forfeiting four of six "first edition" clones of Small Person and all "second edition" clones of Small Person. Farm also sought a sample from a fourth polo pony, Nona, but Cambiaso never made her available, assuring Farm that Nona would be available later. Instead—allegedly contravening Farm's exclusive licensing rights in the 2009 Agreement—Cambiaso cloned Nona twice for La Dolfina and also has allowed third parties to clone Cuartetera and sell the clones.

---

[1] The Court's recitation of the facts is taken from the Amended Complaint. *See* ECF No. 7. At the 12(b) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] La Dolfina is the only member of La Dolfina US, a Florida limited liability company.

In 2019, Farm implanted some of its clone embryos of Cuartetera into surrogate mares. Three cloned foals were born between April and June 2020. Farm sold the three cloned foals. Defendants disputed Farm's right to sell the cloned Cuartetera foals, arguing the 2009 Agreement lacked legal effect.

Disputes surrounding the 2009 Agreement sparked a flurry of lawsuits. On December 3, 2020, Farm brought this action against Defendants, alleging breach of contract and seeking a declaratory judgment of its exclusive licensing rights under the 2009 Agreement. *See* Am. Compl., ECF No. 7. Five days later, Defendants La Dolfina and Cambiaso sued Farm, Meeker, and Crestview Genetics, L.L.C ("Genetics") in the Southern District of Florida, seeking a temporary restraining order based on violations of the Lanham Act and Florida tort and breach of contract claims. *See La Dolfina S.A. LLC v. Meeker*, Case No. 9:20-cv-82231-AMC/DLB (S.D. Fla. 2020). The next day, Genetics sued Defendants in the 67th Judicial District Court in Tarrant County, alleging civil conspiracy and breaches of a 2019 contract between Genetics and Defendants. *Crestview Genetics, L.L.C v. Cambiaso*, Case No. 4:21-cv-56 (N.D. Tex. 2021). Defendants sought to remove the case to this Court. *Id.*

In this case, La Dolfina US challenges the Court's subject matter jurisdiction, the Court's personal jurisdiction over Defendants, and the propriety of the venue. Mot. 6–25, ECF No. 19. Cambiaso and La Dolfina concur with La Dolfina US's personal jurisdiction challenge but contend that transfer to the Southern District of Florida is the more appropriate resolution, under either 28 U.S.C. § 1406(a) based on improper venue or 28 U.S.C. § 1404(a) in the interest of justice. Mot. 6–24, ECF No. 35. Farm contends that the Court has subject matter jurisdiction; the Court has personal jurisdiction over Defendants; venue is proper; and transfer is inappropriate here. Resp. 7–25, ECF No. 33; Resp. 7–25, ECF No. 38. The motions are ripe for the Court's consideration.

## II.     LEGAL STANDARD

### A.  The First-to-File Rule

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985). "As between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). The first-to-file rule is a discretionary principle for the court in later filed cases to apply. *See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011) (internal quotation marks omitted) (quoting *Cadle Co.*, 174 F.3d at 603) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.").

Under the anticipatory-suit exception to the first-to-file rule, a court may dismiss or transfer an otherwise first-filed action when in that action "a party files a declaratory judgment action in anticipation of a suit by its adversary . . . ." *True View Surgery Ctr. One, L.P. v. Goodman Glob. Holdings, Inc.*, No. H-15-3287, 2016 WL 755494, at *6 (S.D. Tex. Feb. 24, 2016). "In such cases, application of the first-to-file rule may deprive a potential plaintiff of his choice of forum and create disincentives to responsible litigation by rewarding the winner of a race to the courthouse."

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-cv-1547-O, 2008 WL 5119599, at *3 (N.D. Tex. Dec. 3, 2008). While "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper anticipatory litigation or otherwise abusive forum shopping," *The Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003) (internal quotations omitted), several "courts in the Fifth Circuit have concluded that an anticipatory suit initiated for the purpose of obtaining a favored forum constitutes a compelling circumstance that justifies a deviation from the first-to-file rule." *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at *5 (S.D. Tex. June 2, 2009).

### B. Transfer under Section 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a threshold to transfer under § 1404(a), the defendant bears the burden of showing that the transferee district is one "where [the case] might have been brought," including a showing of the district's personal jurisdiction over defendants and the propriety of venue there. *See, e.g., BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707 (N.D. Tex. 2009); *Chirife v. St. Jude Med., Inc.*, No. 6:08-cv-480, 2009 WL 1684563, at *3 (E.D. Tex. June 16, 2009).

If the case might have been brought in the transferee district, "this statute . . . place[s] discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3:07-cv-2183-M, 2008 WL 3890495, at *1 (N.D. Tex. Aug. 22, 2008) (citing *Matosky v. Manning*, No. SA-07-cv-051-WRF, 2007 WL 1512027, *2 (W.D. Tex. May 18, 2007)). "The party seeking a change of venue must demonstrate that the balance of convenience and justice weighs heavily in favor of

transfer." *Von Graffenreid, Von Burg, Kaufmann, Winzeler Asset Mgmt., Ltd. v. Craig*, 246 F. Supp. 2d 553, 563 (N.D. Tex. 2003) (citing *Consulting, LLC v. Engineered Fastener Co.*, No. 2-02-cv-0308-BD, 2002 WL 31246770, *1 (N.D. Tex. Oct. 2, 2002)); *see also Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

A district court must consider private and public interest factors when determining whether to grant a motion to transfer. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.*

### III. ANALYSIS

Let's rip off the proverbial Band-Aid—what to do in light of the concurrent, second-filed, substantially overlapping case in the Southern District of Florida. *See Meeker*, Case No. 9:20-cv-82231-AMC/DLB (S.D. Fla. 2020). The first-to-file rule and its exception for anticipatory suits are pertinent. For the forthcoming reasons, the Court finds Farm filed this suit in anticipation of impending litigation with Defendants, divesting Defendants as the "true plaintiffs" of their right to select the proper forum. Thus, the Court declines to apply the otherwise generally applicable first-to-file rule.

When a plaintiff files an anticipatory suit to avoid litigation by the defendant, "the 'true plaintiff' is divested of his right to select the proper forum." *Paragon*, 2008 WL 3890495, at *4.

Therefore, "[c]ourts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum." *Id.* To determine whether the anticipatory filing exception applies, courts consider (1) "the parties' activities prior to filing suit," *id.*; (2) "whether the first filing party acted in bad faith by inducing the other party to delay filing a lawsuit," *Epic Tech, LLC v. Arno Res., LLC*, No. 1:20-cv-577-LY, 2020 WL 5351078, at *5 (W.D. Tex. Sept. 4, 2020) (citing *Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, No. H-18-3490, 2019 WL 4222700, at *2 (S.D. Tex. Sept. 5, 2019)); and (3) whether proceeding with the case would "penalize[e] a party that has attempted to settle a dispute out of court." *Twin City*, 2009 WL 1544255, at *5; *see also 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990).

Here, Farm filed its original Complaint on December 3, 2020, seeking declaratory relief and alleging a breach of contract. Compl., ECF No. 1. Three business days later, Defendants sued Farm among others in the Southern District of Florida; Defendants sought a preliminary injunction, a prejudgment writ of replevin, imposition of a constructive trust, declaratory relief, and damages based on at least nine substantive counts (and the complaint has since been amended to include more). *Meeker*, Case No. 9:20-cv-82231-AMC/DLB (S.D. Fla. 2020). Based on the complaint there, the Southern District of Florida case largely subsumes the parties, facts, and underlying disputes of the case here, including several allegations and claims related to the 2009 Agreement—i.e. the substantial overlap is evident. *Id.* So the Court must ask if Farm brought this case to avoid the later-filed suit by Defendants. The evidence suggests the answer is yes.

Neither party disputes that, from May to September 2020, Farm and Cambiaso sought to resolve differences related to the 2009 Agreement through negotiations between Cambiaso's counsel and Farm and Genetics's General Counsel. *See* Mot. 3, ECF No. 19 (citing Def.'s App.

7

37, "Affidavit of Roberto Zedda", ECF No. 20 (in turn citing Def.'s App. 40, "Affidavit of Bartolome Castagnola")); Resp. 6, ECF No. 38 (citing Am. Compl. ¶ 20, ECF No. 7); *see also* Pl.'s App. 0078–92, ECF No. 39. But the stories diverge after September 2020. Defendants argue that they sent a December 2020 letter to Farm to negotiate a resolution, yet "[w]ithout prior notice, and while settlement negotiations were on-going[,]" Farm filed suit here. Mot. 8, ECF No. 35 (citing Def.'s Supp. App. 477 ¶ 16, ECF No. 26). Meanwhile, Farm contends that its offer to negotiate in September 2020 "went unacknowledged [and] discussion ceased" and that the December 2020 letters are not offers to negotiate but, instead, "threat[s] to criminally prosecute Farm."[3] Resp. 22 n.14, ECF No. 38 (citing Pl.'s App. 0086, 0091–95, ECF No. 39).

The communication among Meeker, Counsel for Farms and Genetics, Counsel for Cambiaso, and Counsel for La Dolfina show a pattern of good will among the parties and good faith negotiations to resolve their contractual dispute out of court. *See* Pl.'s App. 0078–92, ECF No. 39. As late as November 18, 2020, Counsel for Farm and Genetics reached out to Counsel for Cambiaso to offer Farm's understanding of the effect of the 2009 Agreement, to offer a resolution, and to invite Cambiaso to "[f]eel free to suggest something"—presumably an out-of-court settlement. *Id.* at 87–89. On December 2, 2020, Counsel for La Dolfina responded to the November 18, 2020, letter, challenging the ownership of three foals cloned from Cuartetera. *Id.* at 90–91. Specifically, the December 2, 2020, letter asked that Farm and Genetics not sell the foals in dispute, raising the prospect of litigation: "From now on, I request to refrain from any commercial activity with horses or genetic material of LA DOLFINA S.A., otherwise I must not only report their illegal activity to the equine registration authorities, but to criminal justice in both the Argentine republic

---

[3] Defendants maintain that their reference to criminal action "pertained to potential litigation in Argentina . . . for business fraud, which is pursued by private parties under the 'criminal' portion of the Argentine justice system . . . ." Reply 8, ECF No. 37.

and the United States." *Id.* at 91. Similarly, on December 2, 2020, Counsel for Cambiaso responded to the November request to negotiate, reiterating much of La Dolfina's letter and requesting from Farm Cambiaso's written approvals as to the selection of the mares to clone under the 2009 Agreement within forty-eight hours. *See also id.* at 93–95. The next day, Farm sued Cambiaso, La Dolfina, and La Dolfina US in this Court. *See* Compl., ECF No. 1. The timing is no coincidence.

Based on this evidence, the Court concludes that the parties had been engaged in lengthy negotiations and that Farm anticipated suit from La Dolfina and Cambiaso following the December 2, 2020, letters and filed suit in its home jurisdiction the next day. Because Farm filed this largely declaratory action in anticipation of suit, the Court need not apply the first-to-file presumption to this case. *See Cadle Co.*, 174 F.3d at 606; *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 603 (5th Cir. 1983).

Having concluded that this case is not bound to the first-to-file rule, the Court next considers whether the application of 28 U.S.C. § 1404(a) counsels in favor of a transfer to the Southern District of Florida. The Court first considers whether this case might have been brought in the Southern District of Florida. *In re Volkswagen AG*, 371 F.3d at 203 (citation omitted) (When applying the provisions of § 1404(a), the first determination is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."); *see also Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

Defendants' initial briefs left this threshold question largely unaddressed, so the Court specifically ordered briefing on the question. *See* Order, ECF No. 42. Defendants' supplemental brief suffers from the same ailments. *See* Supp. Br. 6–12, ECF No. 43. Specifically, Defendants maintain that the Southern District of Florida has personal jurisdiction over all the present parties, Genetics, and Meeker. *See id.* at 8. But Defendants improperly focus on Farm's, Genetics's, and

9

Meeker's contacts with the forum—not Defendants'—while simultaneously correctly noting "[i]t is the activities of the defendant—Cambiaso/La Dolfina—that are relevant, not whether the Plaintiff—Farm—is situated in Texas." *Id.* at 10 (emphasis removed).

The departure seems to be based on Defendants' consent to personal jurisdiction in the Southern District of Florida. *Id.* at 8 ("Additionally, Cambiaso / La Dolfina are subject to and consent to the personal jurisdiction of the SDFL, and therefore personal jurisdiction is proper over Cambiaso / La Dolfina as well."). The Supreme Court has flatly rejected consent to the transferee district as the jurisdictional hook for a § 1404(a) transfer: "it is immaterial that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum." *Hoffman*, 363 U.S. at 344 (internal brackets omitted) (quoting *Blaski v. Hoffman*, 260 F.2d 317, 321 (7th Cir. 1958); *Behimer v. Sullivan*, 261 F.2d 467, 469 (7th Cir. 1958)). Thus, based on the arguments set forth by Defendants, the Court concludes that Defendants have failed to meet their threshold burden of showing this case might have been brought in the Southern District of Florida, and the Court need not address "the convenience of parties and witnesses [and] the interest of justice[.]" 28 U.S.C. § 1404(a); *see also Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 653 (N.D. Tex. 2010). Therefore, the facts before the Court are insufficient to establish that the Court could properly transfer this case to the Southern District of Florida under § 1404(a).

### IV. CONCLUSION

For these reasons, the Court **DENIES** La Dolfina US's Motion to Dismiss for Lack of Jurisdiction and Improper Venue (ECF No. 19) and **DENIES** Cambiaso and La Dolfina's Motion to Transfer Case out of District/Division (ECF No. 35). Instead of a transfer, the Court **GRANTS** a stay of this case pending the United States District Court for the Southern District of Florida's

resolution of it. Meanwhile, if Defendants believe themselves subject to personal jurisdiction in the Southern District of Florida, they may file supplemental evidence addressing the issue and request that the Court reconsider a transfer of this case to the Southern District of Florida.

    **SO ORDERED** on this **13th day** of **April, 2021**.

                                              Reed O'Connor
                                  UNITED STATES DISTRICT JUDGE