UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CRESTVIEW FARMS, L.L.C.,** | § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 4:20-cv-01288-O |
| **ADOLFO CAMBIASO et al.,** | § § § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendants La Dolfina S.A., LA Dolfina S.A., LLC, and Adolfio Cambiaso's Motion to Reconsider Order (ECF No. 49), filed April 19, 2021; Plaintiff Crestview Farms, L.L.C.'s Response (ECF No. 53), filed April 26, 2021; and Defendants' Reply (ECF No. 56), filed April 29, 2021. Having considered the motions, briefing, and applicable law, the Court **GRANTS** Defendants' Motion to Transfer (ECF No. 35).

**I.   BACKGROUND**

The Court previously addressed and now incorporates by reference the relevant background facts in its April 13, 2021, Memorandum Opinion and Order. *See* Mem. Op., ECF No. 48. Defendants La Dolfina S.A. ("La Dolfina"), LA Dolfina S.A., LLC ("La Dolfina US"), and Adolfio Cambiaso ("Cambiaso") move for reconsideration of the Court's conclusion that a Section 1404(a) transfer was inappropriate in light of Defendants' failure to meet is burden of showing this case "might have been brought" in the Southern District of Florida. *See* Defs.' Mot., ECF No. 49. Plaintiff Crestview Farms, L.L.C. ("Farm") opposed the motion for reconsideration and sought reconsideration of its own of the Court's order finding that the first-to-file presumption did not

1

apply to this case. *See* Pl.'s Mot., ECF No. 52. The parties have fully briefed the issues, and the motions are ripe for the Court's consideration. *See* ECF Nos. 53, 56, 58, 59.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 54(b)

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting Fed. R. Civ. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336 (quotation marks omitted). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear . . . [s]uch a motion requires the Court to determine whether reconsideration is necessary under the circumstances." *Dallas Cnty. v. MERSCORP, Inc.*, 2 F.Supp.3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted).

"[T]he power to reconsider or modify interlocutory rulings [under Rule 54(b)] 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders [under Rule 59(e)]." *Austin*, 864 F.3d at 337 (quoting *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible [than Rule 59(e)], reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)). Accordingly, in contrast to a Rule 59(e) motion, the

2

district court may consider "new arguments" on a Rule 54(b) motion that the movant did not raise in prior briefing. *See id.* at 337.

### B.  Transfer under Section 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a threshold to transfer under § 1404(a), the defendant bears the burden of showing that the transferee district is one "where [the case] might have been brought," including a showing of the district's personal jurisdiction over defendants and the propriety of venue there. *See, e.g., BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707 (N.D. Tex. 2009); *Chirife v. St. Jude Med., Inc.*, No. 6:08-cv-480, 2009 WL 1684563, at *3 (E.D. Tex. June 16, 2009); *see also Emke v. Compana LLC*, No. CIV.A. 3:06-cv-1416O, 2009 WL 229965 (N.D. Tex. Jan. 30, 2009) (O'Connor, J.) (holding that the plaintiff must make this showing by a preponderance of the evidence).

If the case might have been brought in the transferee district, "this statute . . . place[s] discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3:07-cv-2183-M, 2008 WL 3890495, at *1 (N.D. Tex. Aug. 22, 2008) (citing *Matosky v. Manning*, No. SA-07-cv-051-WRF, 2007 WL 1512027, *2 (W.D. Tex. May 18, 2007)). A district court must consider private and public interest factors when determining whether to grant a motion to transfer. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors

are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.* "The party seeking a change of venue must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer." *Von Graffenreid, Von Burg, Kaufmann, Winzeler Asset Mgmt., Ltd. v. Craig*, 246 F. Supp. 2d 553, 563 (N.D. Tex. 2003) (citing *Consulting, LLC v. Engineered Fastener Co.*, No. 2-02-cv-0308-BD, 2002 WL 31246770, *1 (N.D. Tex. Oct. 2, 2002)).

### III.   ANALYSIS

#### A.  Motion to Transfer Venue

Defendants move for the Court to reconsider its denial of Defendants' motion to transfer this case to the Southern District of Florida under 28 U.S.C. § 1404(a). Defs.' Mot. 2, ECF No. 49 (citing Defs.' Mot. to Transfer, ECF No. 35). Specifically, Defendants ask the Court to revisit the threshold inquiry: whether this action "might have been brought" in the Southern District of Florida. *Id.* at 3. Farm argues that "[a]s a matter of law, Florida could not have asserted personal jurisdiction or venue over Defendants on December 3, 2020—the date this suit was filed—so Farm could *not* have 'brought' this suit there." Pl.'s Resp. 1, ECF No. 53. The Court first revisits the question of whether this case "might have been brought" in the Southern District of Florida. *See Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 651–52 (N.D. Tex. 2010); *see also Ill. Union Ins. Co. v. Tri Core Inc.*, 191 F. Supp.2d 794, 798 (N.D. Tex. 2002) (Defendants thus bear the burden to "affirmatively demonstrat[e] that each defendant would have been subject to personal jurisdiction in the transferee court.").

4

"A court has personal jurisdiction over a non-resident defendant if (1) the state's long-arm statute provides jurisdiction, and (2) the exercise of such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (citing *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, *N.V.*, 598 F.3d 802, 807, 811 (11th Cir. 2010)). "A tribunal's authority depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). Florida's long-arm statute provides for both general and specific personal jurisdiction. *See* Fla. Stat. § 48.193(1)-(2); *see also Bristol-Myers Squibb Co.* v. *Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011). Defendants maintain that they were subject to both general and specific jurisdiction in the Florida at the time the case was filed. Def.'s Mot. 4, ECF No. 49. The Court addresses each in turn.

**1. General Jurisdiction**

Florida's long-arm statute provides that "Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (citing Fla. Stat. § 48.193(2)). Because the reach of Section 48.193(2) extends to the limits on personal jurisdiction imposed by the Due Process Clause, the Court need only determine

whether the exercise of jurisdiction would exceed constitutional bounds.[1] *See Fraser*, 594 F.3d at 846. Under the Due Process Clause, a district court may exercise general jurisdiction over "any and all claims" brought against a defendant only when a defendant's affiliations with the State are "so 'continuous and systematic' as to render them essentially at home in the forum State . . . ." *Carmouche*, 789 F.3d at 1204 (quoting *Goodyear*, 564 U.S. at 919).

Defendants argue that "Cambiaso and La Dolfina were, at the time this case was initially filed and still are, subject to general personal jurisdiction" in Florida. Def's Mot. 5, ECF No. 49 (citing Fla. Stat. § 48.193(2)). Plaintiff disagrees, arguing (1) Cambiaso, an Argentinian domicile, "has only *one* domicile[,]" namely Argentina, not Florida, *see* Pl.'s Resp. 5, ECF No. 53; and (2) similarly, La Dolfina is not "fairly regarded as at home" in Florida, *see id.* at 10. The Court concludes that, while neither Cambiaso nor La Dolfina are subject to general personal jurisdiction in Florida, La Dolfina US is subject to general personal jurisdiction in Florida.

*(a) Cambiaso*

When a person is subject to general personal jurisdiction in a forum, the "claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Ford*, No. 19-368, 2021 WL 1132515, at *4 (U.S. Mar. 25, 2021). "But . . . only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Id.* (quoting *Daimler*, 571 U.S. at 137). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). An individual's domicile is "the place of his true, fixed, and permanent home and

---

[1] Plaintiff concedes that Defendants' contacts fall within Florida's long-arm statute. *see* Pl.'s Resp. 5, ECF No. 53; *see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (Section 48.193(2)'s "substantial and not isolated activity" requirement is "the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment . . . .").

principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002) (citation omitted). Thus, an individual has only one domicile. *Id.*

Here, based on the relevant evidence, (1) Cambiaso has traveled to Florida and participated in over one hundred polo tournaments there,[2] (2) Cambiaso and La Dolfina provided training services, sold livestock, and built infrastructure in Florida,[3] (3) Cambiaso and La Dolfina were and are hired to breed and train horses, provide infrastructure, train employees in Florida, and play polo,[4] (4) Cambiaso and his wife currently own a residence and several vehicles in Florida, in which they live three months each year,[5] (5) Cambiaso has purchased livestock in Florida,[6] (6)

---

[2] *See, e.g.,* Def's App. 2–3, Supp'l Aff. of Adolfo Cambiaso ¶ 5, ECF No. 50 (Cambiaso "has participated in at least 65 polo tournaments . . . sanctioned by the United States Polo Association . . . .").

[3] *See, e.g.,* Def's App. 2, 6–7 Supp'l Aff. of Adolfo Cambiaso ¶¶ 2, 17, 20, 22, 25, ECF No 50.

[4] *See, e.g.,* Def's App. 11-12, Supp'l Aff. of Robert P. Jornayvaz, III ¶ 5, 6, ECF No. 50 (Bob Jornayvaz has employed Mr. Cambiaso and La Dolfina to work for him, breed and train horses, provide infrastructure and employees, and have conducted that and other business with Mr. Cambiaso and La Dolfina in Florida for more than ten years, beginning in 2011 through the present.); Def's App. 3, Supp'l Aff. of Adolfo Cambiaso ¶ 13; App. 17 Aff. of Scott Swerdlin, D.V.M. ¶ 14, ECF No. 50 (Mr. Cambiaso has also worked for polo team sponsors and teams in Florida such as Peter Brant's White Birch, George Rawlings' Crab Orchard for over five years, and Russ McCalls' New Bridge (which played under the New Bridge – La Dolfina collaborative name).

[5] *See, e.g.,* Def's App. 3, Supp'l Aff. of Adolfo Cambiaso ¶ 9, ECF No. 50; Def's App. 36, Aff of Maria Vazquez Cambiaso ¶ 7, ECF No. 50 (For the past 10 years Mr. and Mrs. Cambiaso have personally owned, maintained and lived in a residence in Wellington, Palm Beach County during the 3-4 months each year they are in Florida for business.); Def's App. 3, Supp'l Aff. of Adolfo Cambiaso ¶ 10, ECF No. 50; Def's App. 36, Aff. of Maria Vazquez Cambiaso ¶ 7, ECF No. 50 (For the last several years and presently, Mr. Cambiaso has owned and registered several personal vehicles in Florida.).

[6] *See, e.g.,* Def's App. 3, Supp'l Aff. of Adolfo Cambiaso ¶ 11, ECF No. 50; Def's App. 29, Supp'l Aff. of Roberto Zedda ¶ 9, ECF No. 50 (Mr. Cambiaso has repeatedly purchased horses in Florida when he has been in Florida playing polo throughout the last 26 years.).

Cambiaso pays taxes in Florida,[7] and (7) Cambiaso owns a Florida LLC, founded the for-profit World Polo League in Florida, and operates charitable businesses in Florida.[8]

Cambiaso's contacts with Florida do not distinguish Florida from the various polo locales that Cambiaso routinely competes in, maintains relationships in, and does business in. Cambiaso's vacation home in Florida does not establish his domicile there, and neither do his business contacts. *See Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1389 (S.D. Fla. 2014) ("[A]nnual trips to Florida to attend meetings and trade shows do not . . . establish general personal jurisdiction."); *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1323 (S.D. Fla 2010) (holding that two to three business trips to Florida every year were insufficient to establish general jurisdiction); *Fraser*, 594 F.3d at 847 ("A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there."). Although Cambiaso's contacts with Florida are numerous, Cambiaso undisputedly is domiciled in Argentina, where he permanently resides and always returns. Because an individual can only have one domicile and Cambiaso's domicile is not Florida, Cambiaso is not subject to general personal jurisdiction in Florida. *See McCormick*, 293 F.3d at 1258.

(b) *La Dolfina*

For a court to assert general jurisdiction over corporations, the forum must be "equivalent" to a person's domicile—a place "in which the corporation is fairly regarded as at home." *Daimler*,

---

[7] *See, e.g.,* Def's App. 6, Supp'l Aff. of Adolfo Cambiaso ¶ 23, ECF No. 50 (Cambiaso annually pays taxes in the United States, using his Wellington, Florida residence as his taxpayer address).

[8] *See, e.g.,* Def's App. 6, Supp'l Aff. of Adolfo Cambiaso ¶ 24, ECF No. 50; Def's App. 16, Aff. of Scott Swerdlin, D.V.M. ¶ 13, ECF No. 50 (Defendants argues that Cambiaso owns a Florida LLC, maintaining its manager, regular business conduct, and principle place of business in Florida. Defendants also maintain that "Cambiaso is a co-founder of the World Polo League, a for-profit corporation, that is based in Wellington."); Def's App. 3, Supp'l Aff. of Adolfo Cambiaso ¶ 12, ECF No. 50 (Mr. Cambiaso has conducted ongoing and continuous business and charitable operations with Tim Gannon in Florida, owner of Outback Steakhouses and sponsor of the Outback Polo Team).

571 U.S. at 137 (citation omitted). The inquiry is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138–39. The "magnitude of the defendant's in-state contacts" do not control; general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide[,]" considering both the principal place of business and place of incorporation. *Id.* at 137, 139 n.20. ("Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."). A corporation that operates in many places cannot be deemed at home in all of them. *Id*.

Here, La Dolfina is an entity based in Argentina—with extensive operations and facilities in Argentina, including over a hundred employees, between 1,000 to 1,500 horses, massive horse farms, a polo school, breeding facilities, training facilities, over a dozen polo fields, and more. *See* Def.'s App. 009 ¶ 2, 010-13 ¶¶ 4–10. La Dolfina does own property, hires employees, maintains vendor and sponsor relationships, builds infrastructure, and transports horses and equipment to tournaments—all in Florida. *See* Def's App. 2–3, Supp'l Aff. of Adolfo Cambiaso ¶¶ 2, 6, ECF No. 50; Def's App. 20–21, Supp'l Aff. of Juan Carlos DiCaro ¶¶ 6–8, ECF No. 50. But the general jurisdiction analysis demands these contacts be put into context with the larger operation of the corporation. *See Daimler*, 571 U.S. at 137–39. As an internationally present polo organization, La Dolfina maintains its business presence across the globe, and nothing distinguishes its contacts in Florida from those with any other jurisdiction in which La Dolfina conducts similar business activities for La Dolfina to be "fairly regarded as at home" in Florida. *Daimler*, 571 U.S. at 137. La Dolfina is incorporated in Argentina and maintains its principal place of business in

Argentina—where its business activities are centralized and where it is "essentially at home." *Id.* at 138–39. Thus, La Dolfina is not subject to general personal jurisdiction in Florida.[9]

### *(c) La Dolfina US*

Farm contends that, because La Dolfina US was formed after the date this suit was originally filed, this case is not one that "might have been brought" against La Dolfina US. Def's Resp. 1, ECF No. 53. The Court rejects this contention. Absent the dispute over the date of formation, La Dolfina US is otherwise a Florida entity with its principle place of business in Florida and subject to the general personal jurisdiction in Florida courts. *See, e.g., White v. Pepsico, Inc.*, 568 So. 2d 886, 889 (Fla. 1990) (by formally qualifying to do business in Florida and registering an agent, a foreign corporation submits itself to the jurisdiction of Florida courts). Farm sued only La Dolfina and Cambiaso on December 3, 2020. Compl. 1, ECF No. 1. It amended its complaint on December 12, 2020, to add La Dolfina US. Am. Compl 1, ECF No. 7. Farm could have done the same in Florida with no jurisdictional hurdles. Thus, La Dolfina US is subject to general personal jurisdiction in Florida, and this case "might have been brought" against it there.

**2. Specific Jurisdiction**

The Court turns to whether Florida could maintain specific personal jurisdiction over Cambiaso and La Dolfina. "Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford*, 141 S. Ct at 1024. "A court's exercise of specific personal jurisdiction comports with due process when (1) the non-resident defendant 'purposefully availed himself' of the privilege of conducting activities within the forum state, (2) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts within the forum

---

[9] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("It is clear that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida.").

state, and (3) the exercise of personal jurisdiction is in accordance with 'traditional notions of fair play and substantial justice.'" *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020).

First, the contacts with the forum state must result from the defendant's own choices to amount to "purposeful availment." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (quoting *Burger King*, 471 U.S. at 475). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). To decide whether the making of a contract "purposefully avails" a party to a forum's exercise of jurisdiction, courts consider the parties' "prior negotiations . . . [and] contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 811–12 (11th Cir. 2010). "A meeting in the forum state may constitute 'purposeful availment' if it involves 'significant negotiations of important terms.'" *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 991 (11th Cir. 1986).

Second, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Bristol-Meyers*, 137 S. Ct. at 1780 (2017). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* at 1780 (quoting *Goodyear*, 564 U.S. at 919 (2011)). The Supreme Court has recently clarified that the "arise out of or relate to" standard does not require a direct causal link between the

11

defendant's contacts and the plaintiff's claims. *See Ford*, 141 S. Ct. at 1026 ("We have never framed the specific jurisdiction inquiry as always requiring proof of causation . . . ."). In *Ford,* the Court rejected a "causation-only approach," finding that such approach has "no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id.* Rather, the standard "contemplates that some relationships will support jurisdiction without a causal showing." *Id.*

Third, "once it has been decided that a defendant purposefully established minimum contacts within the forum State, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292). These factors include (1) the plaintiff's interest in obtaining convenient and effective relief; (2) the forum state's interest in adjudicating the dispute; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the burden on the defendant to litigate in the forum. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477; *see, e.g., Calder v. Jones*, 465 U.S. at 788–789 (deciding jurisdiction was proper in the forum where the "effects" of out-of-state conduct were felt); *McGee v. Int'l Life Ins. Co.*, 355 U.S. at 233–224 (deciding jurisdiction was proper when a suit was based on a contract that had a substantial connection to the forum state).

Here, Defendants contend "there is substantial evidence for the [Florida] Court to exercise specific jurisdiction over [] Cambiaso [and] La Dolfina" because most "underlying and related events concerning the 2009 Agreement occurred in [] Florida . . . ." Def's Mot. 8, ECF No. 49.

12

Plaintiffs argue that Florida does not have specific jurisdiction over any Defendant. *See* Pl.'s Resp. 15, ECF No. 53. The Court finds that the Southern District of Florida could properly exercise specific personal jurisdiction over both Cambiaso and La Dolfina. The relevant, overlapping minimum contacts of Cambiaso and La Dolfina are sufficient for the Court to conclude Cambiaso and La Dolfina have "purposefully availed" themselves to jurisdiction in Florida in a way that "relates to" the 2009 Agreement claim.

Based on the evidence before the Court, Cambiaso and Meeker met and negotiated in Florida leading up to the 2009 Agreement. *See* Def's App., Aff. of Cambiaso ¶ 9, ECF No. 36. Defendants sought delivery of the clones under the 2009 Agreement in Florida, and the clones were eventually delivered to Florida. Def's App., Aff. of Cambiaso ¶ 11, ECF No. 36; Def's App., Aff. of Zedda ¶ 20, ECF No. 36. From that point forward, Cambiaso and La Dolfina have maintained a regular course of business with Meeker, Farm, Genetics, and their counsel regarding the 2009 Agreement and future agreements connected to Florida. Def's App. 4, Supp'l Aff. of Cambiaso ¶ 16, ECF No. 50. La Dolfina has also maintained a consistent polo business presence in Florida during that time—the same line of business at issue in the 2009 Agreement. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted) (discussing Fla. Stat. § 48.193(1)(a)(1)) ("To satisfy this standard, the defendants' activities must "show a general course of business activity in the State for pecuniary benefit").

Cambiaso and La Dolfina's voluntary presence at meetings and negotiations, contemplating and leading to future contractual terms, performance, and a course of dealing between the parties, constitutes "purposeful availment" in Florida. *See Burger King*, 471 U.S. at 475. Those systematic business contacts and Defendants' horse cloning enterprise sufficiently "relate to" the claims before the Court. *See Ford*, 141 S. Ct. at 1026 (holding that a direct causal

relationship is not necessary). Florida's exercise of jurisdiction over Cambiaso would comport with "fair play and substantial justice" because the Southern District of Florida offers Farm a forum for convenient, effective, and efficient relief, and Defendants' acquiescence to the forum indicates that they would face no greater burden. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292; *Burger King*, 471 U.S. at 476. Thus, the Southern District of Florida could have properly exercise specific personal jurisdiction over Cambiaso and La Dolfina in this suit.

Accordingly, because the Southern District of Florida could have properly exercised personal jurisdiction over all Defendants, the Court concludes that this case "might have been brought" in the Southern District of Florida, so the Court turns to whether the Section 1404(a) factors weigh in favor of transferring this case to the Southern District of Florida.

### 3. Section 1404(a) Factors

A district court must consider private and public interest factors when determining whether to grant a motion to transfer. *See Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.* The Court addresses each factor in turn.

*(a) Private Interest Factors*

The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

First, Defendants argue that most relevant sources of proof are in Florida or closer to Florida than Texas. Def's Mot. Transfer 17, ECF No. 35. Defendants also assert that most if not all the relevant documents are already on file in the SDFL, while the clones at issue are either in Florida or South Carolina. Def's Mot. Transfer 18, ECF No. 35; *see La Dolfina S.A. LLC v. Meeker*, Case No. 9:20-cv-82231-AMC/DLB (S.D. Fla. 2020). Plaintiff argues that this factor favors a Texas forum because Farm, Meeker, and Viagen are Texas residents, and no party or relevant witness resides in Florida. Pl's Resp. 17, ECF No. 38. The Court concludes that the relevant evidence is no more readily accessed in the transferee district than here. *See Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L(BH), 2016 WL 4479511, at *12 (N.D. Tex. Aug. 25, 2016). Where important documents are in both venues, this factor does not weigh in favor of transfer. *Id.* Thus, Defendants have failed to establish this factor weighs in favor of transfer and is simply neutral.

Second, the Court concludes that the transferee court would have identical subpoena power over the non-party witnesses as the NDTX. Thus, this factor is neutral.

Third, Defendants argue that nearly all the witnesses involved in this litigation are in or have a presence in Florida.[10] Def's Mot. Transfer 15, ECF No. 35. Plaintiffs disagree, contending

---

[10] Adolfo Cambiaso has an address in Palm Beach County, Florida. Def's Mot. Transfer 15, ECF No. 35. Roberto Zedda is witness to Meeker selling three clones of Cuartetera in Wellington, Florida. Def's Mot. Transfer 16, ECF No. 35. Robert Jornayvaz is witness to negotiations pertaining to the 2009 and 2019

that, of all the witnesses the Defendants cite, only two are Florida residents and both are irrelevant to the case. Pl's Resp. 16, ECF No. 38. The third factor favors transfer when the transferee district is a more convenient location for the parties and witnesses to attend. *Id.* (citing *Volkswagen AG*, 371 F.3d at 204). Here, because Defendants establish that more parties and witnesses have presences in Florida, the Court concludes that this factor weighs in favor of transfer.

Fourth, the parties failed to address this factor in their briefing, but the Court concludes that this factor weighs in favor of transfer because the parties can litigate all the claims regarding this cloning venture within the same jurisdiction—eliminating practical problems of litigating that may lead to more expensive and less expeditious resolution of this case. *See La Dolfina S.A. LLC v. Meeker*, Case No. 9:20-cv-82231-AMC/DLB (S.D. Fla. 2020). Thus, two private interest factors favor transfer while two private interest factors are neutral.

*(b) Public Interest Factors*

Along with the private interest factors, a court must also consider the *forum non conveniens* public interest factors. *See Volkswagen AG*, 37 F.3d at 203. The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.*

First, neither party addressed the administrative difficulties of litigating the case due to court congestion. The court concludes that the first factor is neutral because the administrative difficulties of court congestion and litigating this case are likely similar in both jurisdictions.

---

Agreements that occurred at his Equestrian Farm in wellington, Florida. Def's Mot. Transfer 16, ECF No. 35.

Second, Defendants maintain that Florida has an interest in having this litigation resolved because the negotiations and alleged misrepresentations occurred in Florida, and that Plaintiffs have wrongfully sold cloned ponies in Florida. Def's Mot. Transfer 19, ECF No. 35. Plaintiffs argue that Texas has a superior interest in litigating this dispute because it is the place of contractual performance and home to Farm, one of the contracting parties. Pl's Resp. 17, ECF No. 38. The Court concludes that Florida has a more localized connection to the lawsuit, and this factor weighs in favor of transfer.

Finally, the third and fourth public interest factors are also unaddressed. However, in federal court, familiarity with the governing law is generally given little weight when considering transfer of venue. *See Royal & Sun Alliance Insurance, PLC v. Nippon Express USA, Inc.*, 202 F.Supp.3d 399, 410 (S.D.N.Y. 2016). Even though the forum's familiarity with the governing law may be a factor in contract cases, both federal courts are equally capable of applying state contract law. *See id.* Therefore, the Court concludes that these factors are neutral.

Because the balance of the 1404(a) factors are either neutral or weigh in favor of transfer, the Court concludes that transfer to the Southern District of Florida is proper here.

## IV. CONCLUSION

For the foregoing reasons and those set forth in the Court's April 13, 2021, Order, the Court concludes reconsideration is necessary under the circumstances, **GRANTS** Defendants La Dolfina, LA Dolfina US, and Cambiaso's Motion to Reconsider Order (ECF No. 49), **GRANTS** Defendants' Motion to Transfer (ECF No. 35), and **TRANSFERS** this case to the Southern District of Florida, recommending assignment to Judge Aileen M. Cannon who is presiding over the pending related case between the parties. *See La Dolfina S.A. LCC v. Meeker*, Civil Action No.

9:20-cv-82231. Because the Court deems transfer appropriate here, the Court **DENIES as moot** Plaintiff's Motion for Reconsideration (ECF No. 52).

    **SO ORDERED** on this **15th day** of **June, 2021**.

*[Signature: Reed O'Connor]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**